The judgment of the court was pronounced by
Slidell, J.
Eliza Foy, the wife of Burwell H. Jones, died in the parish of Ouachita, in October, 1849. A few days after her death, Jones presented a petition to the court in that parish stating the death of his wife, and that she had left no descendants, but ascendants, a surviving father and mother, absentees and residents of Texas. An order was granted for affixing seals, and a guardian of the effects, ad interim, was appointed. Soon after Jones presented a second petition, accompanied by a will of the deceased. He prayed that it might be probated ; that letters might be granted to him as testamentary executor; and that a person should be appointed to represent the absent heirs. An appointment was made; the clerk of the court proceeded to receive proof of the will, and the attorney appointed to represent .the absent heirs filed an opposition. The will was, nevertheless, admitted to probate, and letters testamentary were issued to Jones, who took the usual oath as executor. Under the statute of 1846, the appointment being made by the clerk was considered as provisional. In December, 1849, the opposition of the absent heirs came to trial before the district judge; and after hearing evidence, it was withdrawn, and a judgment was l'endered on the 14th December, 1849, sustaining the will, ordering its execution, and appointing Jones executor. Jones, in the meanwhile, in his capacity of executor, had caused an inventory to be made.
The will of Mrs. Jones is as follows : — -1. I desire that all of my just debts be paid, and if there be anything left, I desire it to be disposed of as follows : 2. I give and bequeath to Burwell Henderson Jones all the property which by law I have a right to dispose of, and make him my universal legatee. 3. I appoint Burwell Henderson Jones my executor, and dispense him from giving security therefor, and give him seizin of my estate; and request him to see that the intentions herein expressed be carried out.
On the 18th December, 1849, Jones, in his individual capacity, entered into a contract with the forced heirs of Mrs. Jones, her father and mother, by which he conveyed to them a number of slaves belonging to the estate, in satisfaction of their share, and they conveyed to him the residue of the estate.
In February, 1849, J. H. Gi'imes obtained a judgment against B. H. Jones, and recorded it. On the'31st December, 1849, he caused a fieri facias to be levied upon certain lands and slaves of the estate of the deceased Eliza Jones, which under the compromise the heirs had released to B. H. Jones. They were advertised for sale under this execution, when, on the eve of the sale, various creditors of the succession presented their petitions, opposing the seizure *644 and sale on the ground that the property seized was the property of the success'oni and nol; °f Jones; was liable to the debts of the succession, and could not ]j0 appropriated to the payment of his creditors. Grimes and the testamentary executor were made parties defendants, as well as other creditors of B. Jijones. In his answer, as testamentary executor, Jones admits his appointment, that he had made an inventory, and taken possession as executor, and that he holds the property as such, with the intention of paying the debts of the succession; and well knowing that only the residue, after such payment, belongs to him. His answer concludes with a prayer for a judgment authorizing him to proceed with the settlement of the succession, and prohibiting the interference of his creditors. The matters pleaded in defence by Grimes, and the other creditors of B. H. Jones, will be noticed hereafter.
The consolidated causes were brought to trial under an agreement of parties, by which proof of the several claims of the creditors of Mrs. Jones was dispensed with, and they were admitted for the purpose of the trial of the contest between the creditors of her succession and those of her husband, “reserving to all the parties the right to contest said claims in the future proceedings in settling said succession ; the object of this trial being to ascertain how far the said creditors of Burwell H. Jones have a right to seize the property left by Eliza Foy at her decease, under the circumstances shown in this case.”
The decree of the district court was, that the seizures made by the various creditors of B. H. Jones, be set aside; that the property seized be restored to the possession of the testamentary executor as property of the succession ; that he proceed in the administration of the succession; and that its creditors be authorized to collect from said succession the amounts due to them, according to law.
From this decree, Grimes and others, the creditors of B. ü. Jones, have appealed.
The argument presented by the appellants is substantially as follows : They contend that by the transaction between B. H. Jpnes and the forced heirs, there was an acceptance of the succession by him as universal legatee. That from the date of the acceptance, the property in controversy became his, and must by a legal fiction be considered as having vested in him upon the death of the testatrix. That it consequently became subject to Grimes’s judicial mortgage, and liable to seizure by the legatee’s creditors. That only three months were allowed to the creditors of the testatrix, from the opening of her succession or the acceptance by the heir, to petition for a separation of patrimony, to record their claims, and preserve a privilege. That by permitting that period to elapse, they have consented to accept the forced heirs and the universal legatee as their debtors, by proportionate shares. In support of these propositions, they rely upon numerous articles of the Civil Code, more particularly the following : arts. 934, 935, 936, 938, 940, 981, 982, 988, 992, 993, 996, 1049, 1005, 1599, 1603, 3242, 1370, 1397, el seq.
These propositions it would be difficult to answer if Jones had, in fact, taken possession of the estate as legatee more than three months before the creditors of the succession acted. But the difficulty, in our opinion, ceases when we consider the nature and circumstances of his possession, and the situation of the disputed property of the succession ever since the death of Mrs. Jones.
It was in the capacity of executor that Jones obtained possession of the property belonging to the succession. By accepting that office he was clothed with *645 a fiduciary capacity, and become the trustee of all persons interested in the sue-cession, according to the instructions of the will which he undertook to execute. In assuming the execution of the will, he undertook the trust of first paying all the debts of the succession. It was only the residuum after that payment, and subject to the rights of the forced heirs, which was bequeathed to Jones. The language of the will is unequivocal. “1. I desire that all of my debts be paid, and if there be anything left, I desire it to be disposed of as follows.” And the will closes with enjoining upon the executor to carry out the intentions expressed by the testatrix. To enable the executor to fulfil the trust, the seizin was expressly given him. Having, as executor, accepted the trust and seizin, it was not in his power to withdraw at his own discretion, and relieve himself from the obligations and duties which he had thus judicially assumed See Toullier, L. 3, t. 2, Nos. 576, 577.
It is obvious from the language of our code, and other legislation, that the actual seizin of an executor is something distinct from and paramount to the fictitious seizin, which, it is said, is vested in the heir immediately upon the death of the ancestor. When that seizin is conferred upon the executor by the will, is confirmed by judicial sanction, and actually assumed by his entering upon his functions, the heir can only take it from him afterwards upon the performance of certain conditions. One of these is, that the heir may be compelled to give security to the creditors, which clearly recognizes the tenure of the executor for their benefit. See C. C. 1652, 1753, 1663, 1664. Act of 1828, p. 156.
The executor in his answer disclaims the suggestion of having abandoned his seizin and trust as executor, and taken possession as heir; but whatever may have been his intention, he was incapable of charging proprio motu, and without judicial authorization the nature of his possession. C. C. 3480, 3404.
Possession is the basis of prescription ; and it would be a strange anomaly if the creditor of an heir or universal legatee, who is not in possession of the property of a deceased, should be permitted to prescribe against a creditor of the succession whose trastee is in possession.
The very term, separation of patrimony, supposes the case of possession taken by the heir. Its object is, in the language of the code, to prevent property out of which a particular class of creditors have a right to be paid from being confounded with other property, and by that means made liable to another class of creditors. But how can this confusion take place when the propriety of the succession is not yet in the possession of the heir, but of a trustee representing its creditors ? Lex neminem cogit ad vana.
The right of the creditors of a succession to be paid out of its assets in preference to the creditors of the heir, rests upon a clear principle of natural justice. In the hands of the deceased, her property was liable for her debts. Upon her death, it should pass to the heir with the same burden. The creditors of the heir ought not to have a greater right in it than the heir himself. As, however, an heir, when he comes into actual possession of the estate, acquires a credit thereby with the public, the law has thought proper to stimulate the vigilance of the creditors of the succession, by requiring them to act within a certain time, under penalty of the loss of their preference. But, until the heir does come into possession, the prescription, in our opinion, does not begin to run against the creditors of the succession. They are protected by the posssesion of the executor, who holds as trustee for them.
*646 There is no equity in the attempt of Jones’ creditors to divert the property °f Mrs. Jones to the payment of his debts, at the expense of her creditors ; nor does (jje |aW) ¡n 0ur opinion, when reasonably interpreted, sanction such an injustice.
The judgment of the district court is therefore affirmed, with costs.